# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Blue "Apple iPhone" cellular phone seized from Rocky TRINIDAD ("Target Device 2") | )<br>)<br>)  Case No.   '23 MJ00232<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the    Southern    District of    California   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-2, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC Sections 371, 922(a)(1)(A), 924(a)(1)(D) | Conspiracy to Deal Firearms Without a License |

The application is based on these facts:
See Attached Affidavit of ATF Special Agent Brandon Farmer, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Brandon Farmer, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by    telephone    *(specify reliable electronic means)*.

Date:   1/20/23

*Judge's signature*

City and state:  San Diego, California     Hon. Daniel E. Butcher, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Brandon Farmer, being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit supports an application authorizing the search of the following electronic devices:

   a) Blue "Apple iPhone" cellular phone seized from Christopher CHAVERO ("**Target Device 1**");

   b) Blue "Apple iPhone" cellular phone seized from Rocky TRINIDAD ("**Target Device 2**"); and

   c) Blue "Apple iPhone" cellular phone seized from Adrian ALVARADO ("**Target Device 3**") collectively ("**Target Devices**").

more particularly described in Attachment A-1, A-2, and A-3, incorporated herein.

2. **Target Devices** were seized incident to the arrest of Christopher CHAVERO, Rocky TRINIDAD, and Adrian ALVARADO on May 11, 2022 during controlled purchase operations for firearms. The **Target Devices** are being stored at the San Diego Group IV, ATF Vault located at 5901 Priestly Dr., Suite 304, Carlsbad, CA 92008. The evidence to be searched for and seized is described in Attachment B, incorporated herein.

3. Based on the information below, there is probable cause to believe that the **Target Devices** contain evidence of a crime, specifically, violations of Title 18, United States Code, Sections 371 and 922(a)(1)(A) and 924(a)(1)(D)-Conspiracy to Deal Firearms Without a License (the subject offenses).

## EXPERIENCE AND TRAINING

4. I am a Special Agent ("S/A") with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have been so employed since January 2019.

5. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator's Training Program, and the ATF National Academy's Special Agent Basic Training course. As an ATF S/A, I have received training in federal firearms and narcotics laws and have been the affiant on search and arrest warrants for such violations. In this

realm, I have authored affidavits for search warrants, and complaints which have yielded evidence of federal criminal violations.

6. Through my training, experience, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for individuals involved with illegal weapons and narcotics trafficking to work with or deal with other individuals, and to do so by utilizing cellular telephones to communicate with other gang members, associates, and co-conspirators to further their criminal activities. I am further aware that weapons and narcotics traffickers, including criminal gangs, generate many types of evidence including, but not limited to, cellular phone-related evidence, such as images, video, text, and voice messages documenting their trafficking and gang activities and identifying other traffickers, gang members, and associates.

7. I know that crimes carried out by more than one person, like the crimes here, often involve some amount of communication among those involved before, during, and after the crime. I know that individuals involved in trafficking firearms and narcotics will utilize these devices to communicate with co-conspirators, sources, and customers through text messages, SMS messages, calls, voicemails, social media and social networking/communication applications, and emails. In my training and experience, such communications have revealed the identities and relationships between and among the involved individuals, as well as their motive, hostility, knowledge, and intent relating to the crime. Moreover, such communications have also revealed consciousness of guilt and efforts to impede police investigation. I further know that the way these individuals use these devices can reveal information related to their location and/or activities before, during, and after engaging in criminal activity through collected location information, application usage, and images or video recordings.

8. Based on my training and experience, I know that people who possess guns, illegal drugs, unlawfully obtained money, and/or traffic narcotics and firearms, often will take and store photos of the contraband. I know from training and experience that individuals involved in firearms and narcotics trafficking will also share photographs,

2

videos, and other media files to co-conspirators, sources, and customers, through text messages, emails, messaging applications, and social media and social networking applications, to further the criminal activity by using such media files to negotiate and facilitate sales and purchases and bolster credibility.  Similarly, they often refer to their guns, illegal drugs, and other contraband in text messages, emails, or messages sent in messaging applications or social media and social networking applications that are carried out by and stored by the service providers.  These communications, images, and video recordings can be evidence of a perpetrator's prior possession of a weapon or contraband, and of his or her knowledge and intent relating to such possession and distribution.

9. Furthermore, I know, based on my training and experience, that individuals involved in the trafficking of firearms and narcotics will utilize multiple phones or change phone numbers to thwart detection and identification by law enforcement.

10. The facts set forth herein are those that I believe are relevant to the limited purposes of this affidavit, namely, to establish probable cause for the requested warrant. The affidavit does not, therefore, include each and every fact that I or other law enforcement personnel may have learned in connection with this ongoing investigation.  In the affidavit, all dates and times are approximate.

11. I have knowledge of the facts set forth below based on my review of the reports, recorded statements, and evidence collected in this case.

## FACTS SUPPORTING PROBABLE CAUSE

12. Between the months of November 2021 and May 2022, an ATF confidential informant ("CI")[1] and ATF Undercover Special Agent ('UCA") participated in a series of

---

[1] The CI involved in this investigation cooperates in exchange for a charging or sentencing consideration with regard to CI's pending felony firearms and controlled substance charges. The CI has not been paid any monetary payments as part of this investigation. The CI has provided truthful and credible information related to this investigation as well as previous and current ongoing investigations. A criminal records check revealed the CI was convicted of felony domestic violence, exhibiting a deadly weapon and received three years' probation. In summer of 2022, CI was arrested and charged in state court with prohibited person in possession of ammunition, felon in

3

recorded and surveilled controlled purchase operations for firearms from CHAVERO, TRINIDAD, and ALVARADO. During the meetings, the CI and/or UCA purchased numerous firearms identified as un-serialized, privately made Glock type pistols and AR15 type pistols, commonly referred to as "ghost guns" from CHAVERO, TRINIDAD, and ALVARADO.

13. CHAVERO communicated with the UCA by using cellular phone number 760-829-8740[2], believed to belong to **Target Device 1**, the cellular phone Agents recovered from CHAVERO at the time of his arrest following a controlled purchase and arrest operation for firearms. The UCA and/or CI communicated with CHAVERO utilizing the cellular phone number provided by CHAVERO between November 2021 and May 2022 to coordinate the sale of un-serialized, privately made firearms. It is also believed CHAVERO utilized the same phone to communicate with TRINIDAD and ALVARADO to facilitate the sale of firearms.

14. On December 8, 2021, during the controlled purchase of firearms CHAVERO utilized his cell phone believed to be **Target Device 1** to call and message with TRINIDAD. It is believed that CHAVERO contacted TRINIDAD via TRINIDAD's cellphone, believed to be **Target Device 2**. Through these communications, CHAVERO coordinated the delivery of firearms from TRINIDAD. TRINIDAD delivered the firearms which were ultimately purchased by the CI.

15. Agents conducted two more controlled purchases of firearms from CHAVERO on December 15, 2021 and January 14, 2022. During those purchases, CHAVERO referred to TRINIDAD as his "cousin" and the person who builds the firearms purchased by the CI and UCA. **Target Device 2** was recovered from TRINIDAD at the

---

possession of a firearm, and willful discharge of a firearm in grossly negligent manner. The CI received a strike felony conviction and time served.

[2]   As early as November 1, 2021, CHAVERO communicated with the CI via the 760-829-8740 phone number. After a controlled purchase operation on February 8, 2022, Agents lost contact with CHAVERO. On or about April 5, 2022, CHAVERO reached back out to the CI. CHAVERO told the CI he lost his cell phone and contacts and asked the CI to have the UCA contact him on the 760-829-8740 phone number.

time of his arrest following the controlled purchase of firearms on May 11, 2022. Although a cell phone number for TRINIDAD was never provided, CHAVERO communicated with TRINIDAD via phone during the December 8, 2021 purchase. Additionally, as stated above, based on my training and experience, individuals involved in trafficking firearms will utilize cellular telephones to communicate with co-conspirators. Consequentially, there is probable cause to believe TRINIDAD used **Target Device 2** to communicate with CHAVERO to coordinate the business of illegally manufacturing and selling firearms.

16. On April 20, 2022, I organized another controlled purchase of one AR15 type pistol from CHAVERO. The controlled purchase was originally supposed to be from CHAVERO. However, CHAVERO introduced ALVARADO to the UCA by providing ALVARADO with the UCA's cell phone number. CHAVERO told the UCA that he would be unable to make the deal and that his cousin, who he called "Chucky," but was later identified as ALVARADO, would meet the UCA for the deal. ALVARADO met with the UCA in a parking lot located at 1200 Auto Park Way, Escondido, CA 92029. During the video and audio recorded meeting, ALVARADO got into the UCA's vehicle. Once in the UCA's vehicle ALVARADO handed the UCA a firearm. While discussing the quality of the firearm, ALVARADO told the UCA, "We always try to make them as good as possible so they won't like be jamming up and shit." ALVARADO sold the UCA one un-serialized, PMF, AR15 type, 5.56 caliber pistol in exchange for $1,400.

17. ALVARDO communicated with the UCA by using cellular phone number 442-221-4775, believed to belong to **Target Device 3**, the cellular phone recovered from ALVARADO at the time of his arrest following a controlled purchase and arrest operation for firearms on May 11, 2022. The UCA communicated with ALVARADO utilizing the cellular phone number provided by ALVARADO between April 2022 and May 2022 to coordinate the sale of un-serialized, privately made firearms. It is also believed ALVARADO utilized the same phone to communicate with TRINIDAD and CHAVERO. Surveillance conducted around the controlled purchases revealed that ALVARADO met up with TRINIDAD and CHAVERO immediately after one of the April 20, 2022

controlled purchases. In light of the above facts and my experience and training, there is probable cause to believe that CHAVERO, TRINIDAD, and ALVARDO conspired and were in the business of illegally manufacturing and selling un-serialized, privately made firearms more commonly referred to as "ghost guns". It is reasonable to believe that they used **Target Devices** to communicate and coordinate their illegal activities.

18. Based upon my experience and training, consultation with other law enforcement officers experienced in firearms and narcotics trafficking investigations, and all the acts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Devices**.

19. Based on my training and experience, firearms and narcotics traffickers may be involved in planning and coordination of firearms and narcotics sales in the days and weeks leading up to a controlled purchase. Co-conspirators are also often aware of a defendant's arrest to determine the whereabout of the firearms and narcotics. Accordingly, I request permission to search **Target Device 1** and **Target Device 2** for data beginning on **November 1, 2021, up to and including May 11, 2022;** and **Target Device 3** for data beginning on **April 1, 2022, up to and including May 11, 2022.**

**PROCEDURES FOR ELECTRONICALLY STORED INFORMATION**

20. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the

network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and

record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, I or another qualified law enforcement officer will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## GENUINE RISKS OF DESTRUCTION

23. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case, only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

## PRIOR ATTEMPTS TO OBTAIN INFORMATION

24. The United States has not attempted to obtain this information by other means.

## CONCLUSION

25. In light of the above, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the illegal firearms activities of Christopher CHAVERO, Rocky TRINIDAD, and Adrian ALVARADO are stored in the memory of the TARGET DEVICES, *e.g.*, telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, and other digital information. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A)

& (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

_____
Brandon Farmer, Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 20th day of January, 2023.

_____
HONORABLE DANIEL E. BUTCHER
United States Magistrate Judge

## ATTACHMENT A-2

ELECTRONIC DEVICE TO BE SEARCHED

Blue "Apple iPhone" cellular phone, seized form TRINIDAD ("**Target Device 2**")

 

## ATTACHMENT B-2

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data concerning violations of Title 18, United States Code, Sections 371 and 922(a)(1)(A) and 924(a)(1)(D) for the period of **November 1, 2021, up to and including May 11, 2022** and is described as follows:

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

    a. tending to indicate efforts to acquire, possess, or use firearms or ammunition;

    b. tending to identify other facilities, storage devices, or services—such as email addresses, IP addresses, phone numbers—that may contain electronic evidence tending to indicate efforts to acquire, possess, or use firearms or ammunition;

    c. tending to identify co-conspirators, criminal associates, or others involved in efforts to acquire, possess, or use firearms or ammunition;

    d. tending to identify travel to or presence at locations involved in efforts to acquire, possess, or use firearms or ammunition;

    e. tending to identify the user of, or persons with control over or access to, the **Target Device 2**; or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.